## TABLE OF CONTENTS FOR EXHIBITS

1.  Exhibit A                                                Page 1

2.  Exhibit B                                                Page 4

3.  Exhibit C                                                Page 11

LAW OFFICES
DRINKER BIDDLE &
REATH LLP
Los Angeles

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| DALRADA FINANCIAL CORPORATION | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION 08-cv-0528 |
| | : | |
| v. | : | |
| | : | |
| ALL STAFFING, INC., ANGELA COSTELLO, and DOES 1-50 | : | |
| | : | |
| Defendants. | : | |

**AFFIDAVIT OF ANGELA L. COSTELLO
IN SUPPORT OF MOTION TO DISMISS**

COMMONWEALTH OF PENNSYLVANIA )
                              )
COUNTY OF CARBON              )

BEFORE ME, the undersigned authority, on this day personally appeared Angela L. Costello, who, being by me first duly sworn, upon her oath deposed and stated as follows:

1. My name is Angela L. Costello. I am over eighteen (18) years of age, am of sound mind, am capable of making this Affidavit, and am fully competent and authorized to testify as to matters stated herein. All of the matters stated in this Affidavit are true and correct and are within my personal knowledge.

2. I am Chief Operating Officer of All Staffing, Inc. ("All Staffing"). My job responsibilities include supervising the processing of tax information for All Staffing clients.

1

3. For the time period of May through September 7, 2007, certain clients of Dalrada Financial Corporation ("Dalrada") were operating under the Federal Employer Identification Number ("FEIN") of ClearPoint HRO, LLC ("ClearPoint"), a company affiliated with Mercer Ventures, Inc. ("Mercer"), pursuant to a services agreement between Mercer and Dalrada ("the DFCO Agreement"). A true and correct copy of the DFCO Agreement, as referenced in All Staffing's Motion to Dismiss, is attached to the Motion as Exhibit B.

4. In addition to providing certain W-2 information directly to Dalrada, as well as providing information to ClearPoint during the pendency of the DFCO Agreement, in January 2008, I sent ClearPoint the information necessary to complete W-2 forms for the period of May through June 30, 2007. Initially, a representative of ClearPoint advised me that ClearPoint did not want to receive information for the time period of July 1 through September 7, 2007.

5. Subsequently, in February 2008, I sent ClearPoint additional information for the period of July 1 through September 7, 2007. Thus, upon information and belief, ClearPoint and Mercer are in the possession of the information necessary to complete W-2 forms for the period of May through September 7, 2007, and Dalrada has had the ability to obtain this information from ClearPoint and Mercer.

6. In February 2008, All Staffing received an inquiry regarding the receipt of an inaccurate W-2 form from Dalrada. All Staffing advised the individual to contact ClearPoint.

7. Thereafter, the individual faxed All Staffing a copy of a Settlement Agreement between Mercer and Dalrada that, upon information and belief, was forwarded to the individual by a representative of ClearPoint.

8. A true and correct copy of the Settlement Agreement between Mercer and Dalrada, as referenced in All Staffing's Motion to Dismiss, is attached to the Motion as Exhibit C.

Further Affiant Sayeth Naught.

*(signature)*
Angela Costello
Vice President, Sales and Operations
All Staffing, Inc.
PO Box 219
Lansford, PA 18232

Sworn to and subscribed before me this ___ day of March, 2008.

*(signature)*
Notary Public, Commonwealth of Pennsylvania
My Commission Expires:

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
MONICA MARSHALL, Notary Public
Lansford Borough, Carbon County
My Commission Expires Sept. 4, 20__

3

**EXHIBIT B**

858 408 3305

# Mercer Ventures, Inc.
## DFCO Services Agreement

Agreement made this the 30th day of April, 2007 by and between Mercer Ventures, Inc, dba Company Resources, a Pennsylvania corporation located at 1600 Manor Drive, Suite 110, Chalfont, PA 18914 hereafter referred to as "MVI", and Dalrada Financial Corporation, a Delaware corporation located at 9449 Balboa Avenue., San Diego, CA, 92123 hereafter referred to as "DFCO".

WHEREAS, MVI provides staffing and workforce management services to companies in various states including California;

WHEREAS, DFCO will identify their client list for MVI to allow MVI to provide staffing and workforce management services to the list of prospective customers is set forth in Schedule A attached hereto and incorporated by reference.

WHEREAS, DFCO agrees to perform certain administrative functions on behalf of MVI to assist MVI in servicing the Customers set forth in Schedule A;

WHEREAS, the parties to this Agreement wish to create and define the scope of the relationship between them;

NOW THEREFORE, in consideration of the mutual promises contained in this Agreement, and other good and valuable consideration and intending to be legally bound hereby, the parties agree as follows:

**Section A: Duties of DFCO:** DFCO will promote and market the business and services of MVI to prospective business Customers shown in Schedule A and updated from time to time by mutual agreement. DFCO will assist MVI's marketing efforts and the furtherance of its business in general, by performing certain tasks including developing qualified leads that fit MVI's profile of desirable Customers. In addition DFCO shall perform the following:

1. DFCO will submit to MVI complete submission packages for final underwriting approval for prospective new customers, including a pre or post safety report as required.

2. DFCO will perform all duties relative to having a Customer Service Agreement signed and enrolled in the MVI payroll system for processing.

3. DFCO will provide all necessary servicing of the new Customer including payroll processing, invoicing, customer service and all other related services that MVI and DFCO deem necessary.

4. DFCO will be responsible for all 1st notice of injury reports and will thereafter submit those claims to MVI on their prescribed forms for handling.

5. DFCO will gather all documentation and information related to unemployment claims and thereafter provide all gathered information to MVI for their handling of the unemployment claim.

6. DFCO will supply MVI each Friday by 2:00 PM Pacific Time an electronic Payroll Voucher file, in MVI's prescribed format, for the preceding payroll period that may be available for import into MVI's system.

7. DFCO will supply MVI each Friday by 2:00 PM Pacific Time an electronic Tax Register Summary, in MVI's prescribed format, file for the preceding payroll period that may be available for import into MVI's system.

8. DFCO will supply MVI each Friday by 2:00 PM Pacific Time an electronic Workers' Compensation Premium Report, in MVI's prescribed format, for the preceding payroll period that may be available for import into MVI's system.

9. DFCO will prepare and supply to MVI an internal invoice that will reconcile Customer billings, net checks issued, and invoice through to total amount due and wired to MVI based upon Agreement.

10. Based upon the reports provided, DFCO will wire funds to MVI in the amount equal to the invoice for Customers less any credits items including but not limited to net payroll checks issued by DFCO partner on behalf of MVI.

11. If MVI requests, DFCO has agreed to issue and send year-end W-2's for client's employees with a copy provided to MVI.

12. DFCO will provide MVI with notice of all terminated Customers.

Section B: Duties of MVI:

1. MVI will provide final underwriting approval on DFCO' customer submissions.

2. MVI will provide Certificates/Proof of Workers' Compensation coverage for each approved customer submissions and those additional documents requested by Customers relative to the coverage provided within 48 hours of request.

3. MVI will process and handle all unemployment related claims associated with Customers.

4. MVI will administer all claims of approved Customers once 1st Notice of Injury is provided.

5. MVI will make all necessary Workers' Compensation payments to Carrier related to all Customers.

6. MVI will make all necessary Tax payments related to all Customers.

7. MVI will provide at least 90 days notice to DFCO with relation to any changes that may affect MVI's ability to provide the services promised in the Agreement.

**Section C: DFCO Profits:** In consideration of DFCO's efforts under this Agreement, DFCO is entitled to the DFCO Partner Profit defined as follows:

1. DFCO Profit is equal to the total amount of weekly gross revenue generated by each Customer minus the amount DFCO is required to pay to MVI each week for outsourcing services as set forth in Schedule B.

**Section D:** Nothing in this Agreement is intended to create an employment relationship or partnership between MVI and DFCO. At all times DFCO is an independent contractor with respect to MVI and its business. DFCO will have no authority to bind MVI to a contractual relationship of any kind nor the power to modify, alter, or waive any provisions of any contract between MVI and the Customers listed in Schedule A. MVI will reserve the right to accept or reject any business produced by DFCO. All costs and expenses incurred by DFCO in conjunction with the performance under this Agreement shall be solely the financial responsibility of DFCO.

**Section E:** MVI will provide brochures and other written materials to DFCO's both to promote MVI and to assist in transacting business with its Customers. The parties acknowledge that the MVI's type of business is regulated in some jurisdictions. To ensure that MVI's promotional or other printed material complies with such laws, DFCO agrees to submit all self-created written promotional material to MVI for review and approval before disseminating such material to prospective Customers.

**Section F:** DFCO and MVI recognize that each Party's contacts, agents, and customers (herein after known as Proprietary Resources and as identified in Schedule A, which shall be updated from time to time by mutual consent) which shall become known to the other party are proprietary property of the Party. Each Party agrees that it shall not circumvent the other in making separate agreements with, contacting or consulting with, any of the Party's Proprietary Resources which may become known to the other Party without the Party's express written consent. By breaching the other Party's Proprietary Resources, the Breaching Party acknowledges that it will cause the Injured Party to suffer substantial damages which cannot be adequately estimated and that MVI would not have an adequate remedy at law and would be irreparably harmed in the event that the provisions of this paragraph were not performed in accordance with their specific terms or were otherwise breached. This promise by each Party not to circumvent the other Party and to



6

Jul 11 2007 10:14AM   DALRADA FINANCIAL CORPORA   8582774728   p.5

maintain confidentiality of each Party's Confidential Information shall survive for a period of two (2) years after termination of this Agreement.

**Section G: Risk Sharing.** DFCO agrees to share the costs related to workplace injuries for employees of MVI that are providing services at the Customer's worksite. Marketing Agent shall reimburse MVI for the cost of all workmen's compensation claims generated by employees of Customers placed with MVI by DFCO (herein known as "Occupational Claims"). DFCO shall reimburse MVI for all Occupational Claims and related claims incurred up to a maximum of $250,000 per occurrence. Upon the occurrence of an injury to an employee that is covered by this Agreement, DFCO agrees to pay to MVI within thirty (30) business days a Claim Reserve claim related to the injury equal to 150% of the incurred amount of the claim as defined by the Third party Administrator of MVI up to a maximum of $250,000 per occurrence, hereinafter the "Claim Reserve". The amount of the Claim Reserve shall be established by the third party administrator that manages the MVI's workers' compensation claims (as of the execution date of this Agreement, the third party administrator for the MVI is Gallagher Basset). The 150% reserve amount shall be returned to DFCO when the claim is settled. Failure of DFCO to pay any and all amounts related to Claim Reserve shall be deemed a material breach of this Agreement. If such material breach has occurred, MVI shall seek all remedies available at law.

    i. As collateral for any material breach or failure to pay monies owed, DFCO shall place in escrow $250,000 in cash to be held as a deposit against the obligations of DFCO pursuant to the Risk Sharing section of the Agreement. These monies shall be held by an independent agent agreed to by the Parties and shall be returned to DFCO when all claims are closed subject to this Agreement.

**Section H: Collections.** DFCO shall be solely responsible for the financing and the collection of invoices from Customers it places with MVI. If Customers shall not pay the invoices as they become due then DFCO shall guarantee and pay all funds due to MVI for all payroll and premium related costs regardless of receiving payment from Customers for services rendered. DFCO shall pay these monies due on a weekly basis to MVI even if the Customer is not required to pay on a weekly basis.

**Section I: Termination of this Agreement.** MVI or DFCO shall have the right to voluntarily terminate this Agreement by providing the non-terminating party with sixty days written notice of their intent to cancel this Agreement without cause. Notice of termination shall be given by Certified Mail, Return Receipt Requested to the receiving party's last known mailing address and shall be effective upon mailing.

    (1) **Termination.** Either Party shall have the right to terminate this Agreement with or without cause. If either party terminates the Agreement without cause, the Parties agree to use commercially reasonable efforts to execute a Client Transitions Agreement to allow for transition of the Customers to DFCO.



@004/007   07/11/2007 14:47 FAX

7

(ii) <u>Cancellation For Cause</u>. Either Party shall have the absolute right to terminate this Agreement for Cause. Either Party shall provide to the other party with 10 days' written notice of Party's intent to cancel this Agreement for cause. Either Party may be terminated for cause, if such Party participates in unfair competition, unethical behavior, theft, embezzlement, fraud, violates any state insurance code, issues fraudulent certificates of insurance, violates the terms of the confidentiality or non-compete provisions of this Agreement, or performs any act that is determined to be detrimental to the other Party program.

This Agreement constitutes the entire understanding of the parties. No modification to this Agreement will be valid unless in writing, executed by the parties hereto. Neither party may assign the rights and obligations to perform the duties that are set forth in this Agreement. This Agreement will be construed under the laws of the State of Pennsylvania. Any disputes shall be adjudicated in the jurisdiction of MVI's domiciled county.

IN WITNESS WHEREOF, the parties execute this Agreement the day and the date first written above

Mercer Ventures, Inc.

_____
Chris Ferguson
President
Date: 4/30/07

Dalrada Financial Corporation

_____
Brian Bonar
Title: CEO
Date: 4/20/07

8

**Schedule A**

**LIST OF CUSTOMERS**

List to be supplied.

Jul 11 2007 10:14AM   DALRADA FINANCIAL CORPORA   8582774728   p.8

### Schedule B: MVI
### Bill Rate

#### Long Term Contract Employees

| Workmen's Comp Code | Bill Rate |
|---|---|
| All Codes | Hourly Wage Rate plus 3.8% plus employer taxes SUTA Rates to be defined by each state and processed Caps on. |



**EXHIBIT C**

### Settlement Agreement and Mutual Release of All Claims

September 18, 2007

The following is a Settlement Agreement and Mutual Release of All Claims ("Agreement") by and between Dalrada Financial Corporation, a Delaware corporation located at 9449 Balboa Avenue, San Diego, CA, and all representatives, predecessors, successors, assigns, affiliates, shareholders, related parties and anyone claiming through and under them ("DFC") and Mercer Ventures, Inc, a Pennsylvania corporation located at 1600 Manor Drive, Suite 110, Chalfont, PA and all representatives, predecessors, successors, assigns, affiliates, shareholders, related parties and anyone claiming through and under them ("MVI"). DFC and MVI shall be collectively known as the "Parties".

WHEREAS, DFC and MVI desire to settle any and all claims related directly or indirectly to the Mercer Ventures, Inc DFCO Services Agreement ("DFCO Agreement"). The DFCO Agreement is attached hereto and incorporated herein by reference. This Agreement is a full and final settlement of the DFCO Agreement and the DFCO Agreement is hereby null and void.

For and in consideration of the following,

1. As of June 30, 2007(hereinafter the "formal termination date"), MVI ceased to provide any services to Customers related directly or indirectly to the DFCO Agreement.

2. As of June 30, 2007, MVI did not provide any employees of any kind to DFC or to Customers of DFC or to any Customers related directly or indirectly to the DFCO Agreement. Following the formal termination date, MVI did not assume and shall not assume any obligations or other liabilities related to any employees that may or may not be related directly or indirectly to the DFCO Services Agreement.

In exchange for the payment of $750,000 by MVI to DFC, the Parties do hereby remise, release and forever discharge one another and all persons, corporations, or other entities who might be claimed to be jointly or severably liable with them from any and all actions and causes of action, claims and demands, suits, damages, costs, attorneys fees, expenses, debts, deposits, dues, accounts, bonds, covenants, contracts, agreements, and compensation whatsoever, in law or in equity ("Claims"), whether the same are now known or unknown, accrued or unaccrued, from the beginning of time up to and including the present date, which we as Parties which we or anyone claiming by, through or under us in any way might have or could claim against one another.

The undersigned represent and warrant that they are duly authorized and empowered representatives for their respective Parties.

September 18, 2007

Accepted and Agreed:

_____
Chris Ferguson
Mercer Ventures, Inc

_____
Brian Bonar
Dalrada Financial Corporation

12